UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MICHAEL D. MCCORT,                          )
                                            )     Case No. 2:14-cv-01358-GMN-NJK
                    Plaintiff(s),           )
                                            )     REPORT AND RECOMMENDATION
vs.                                         )
                                            )
CAROLYN W. COLVIN, Acting                   )
Commissioner of Social Security,            )
                                            )
                    Defendant(s).           )
                                            )
_____ )

This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff Michael McCort's application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. Ch. 7. Currently pending before the Court is Plaintiff's Motion for Reversal and/or Remand. Docket No. 17. The Commissioner filed a response in opposition and a Cross-Motion to Affirm. Docket Nos. 19, 20. Plaintiff filed a reply. Docket No. 21. This action was referred to the undersigned magistrate judge for a report of findings and recommendation pursuant to 28 U.S.C. 636(b)(1)(B) and Local Rule IB 1-4.

I.      STANDARDS

        A.      Judicial Standard of Review

The Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). See Akopyan v. Barnhart, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that, "[a]ny individual, after any final decision of the Commissioner of Social Security

1  made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a

2  review of such decision by a civil action . . . brought in the district court of the United States for the

3  judicial district in which the plaintiff resides."  The Court may enter, "upon the pleadings and transcript

4  of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social

5  Security, with or without remanding the cause for a rehearing."  Id.

6  　　　The Commissioner's findings of fact are deemed conclusive if supported by substantial evidence.

7  Id.  To that end, the Court must uphold the Commissioner's decision denying benefits if the

8  Commissioner applied the proper legal standard and there is substantial evidence in the record as a

9  whole to support the decision.  See, e.g., Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).  The

10  Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance;

11  it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

12  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  In determining whether the Commissioner's

13  findings are supported by substantial evidence, the Court reviews the administrative record as a whole,

14  weighing both the evidence that supports and the evidence that detracts from the Commissioner's

15  conclusion.  See, e.g., Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

16  　　　Under the substantial evidence test, the Commissioner's findings must be upheld if supported

17  by inferences reasonably drawn from the record.  Batson v. Comm'r, Soc. Sec. Admin., 359 F.3d 1190,

18  1193 (9th Cir. 2003).  When the evidence will support more than one rational interpretation, the Court

19  must defer to the Commissioner's interpretation.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

20  Consequently, the issue before this Court is not whether the Commissioner could reasonably have

21  reached a different conclusion, but whether the final decision is supported by substantial evidence.

22  　　　It is incumbent on the ALJ to make specific findings so that the Court does not speculate as to

23  the basis of the findings when determining if the Commissioner's decision is supported by substantial

24  evidence.  The ALJ's findings should be as comprehensive and analytical as feasible and, where

25  appropriate, should include a statement of subordinate factual foundations on which the ultimate factual

26  conclusions are based, so that a reviewing court may know the basis for the decision.  See, e.g., Gonzalez

27  v. Sullivan, 914 F.2d 1197, 1200 (9th Cir. 1990).

28  //

2

1

### B.    Disability Evaluation Process

2        The individual seeking disability benefits bears the initial burden of proving disability.  Roberts

3   v. Shalala, 66 F.3d 179, 182 (9th Cir 1995).  To meet this burden, the individual must demonstrate the

4   "inability to engage in any substantial gainful activity by reason of any medically determinable physical

5   or mental impairment which can be expected . . . to last for a continuous period of not less than 12

6   months."  42 U.S.C. § 423(d)(1)(A).  More specifically, the individual must provide "specific medical

7   evidence" in support of his claim for disability.  See, e.g., 20 C.F.R. § 404.1514.  If the individual

8   establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show

9   that the individual can perform other substantial gainful work that exists in the national economy.

10  Reddick, 157 F.3d at 721.

11       The ALJ follows a five-step sequential evaluation process in determining whether an individual

12  is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920).  If

13  at any step the ALJ determines that he can make a finding of disability or nondisability, a determination

14  will be made and no further evaluation is required.  See Barnhart v. Thomas, 540 U.S. 20, 24 (2003);

15  see also 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The first step requires the ALJ to determine

16  whether the individual is currently engaging in substantial gainful activity ("SGA").  20 C.F.R. §§

17  404.1520(b), 416.920(b).  SGA is defined as work activity that is both substantial and gainful; it involves

18  doing significant physical or mental activities usually for pay or profit.  20 C.F.R. §§ 404.1572(a)-(b),

19  416.972(a)-(b).  If the individual is currently engaging in SGA, then a finding of not disabled is made.

20  If the individual is not engaging in SGA, then the analysis proceeds to the second step.

21       The second step addresses whether the individual has a medically determinable impairment that

22  is severe or a combination of impairments that significantly limits him from performing basic work

23  activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is not

24  severe when medical and other evidence establish only a slight abnormality or a combination of slight

25  abnormalities that would have no more than a minimal effect on the individual's ability to work.  20

26

27

28

C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p.[1] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  If the individual's impairment or combination of impairments meet or equal the criteria of a listing and meet the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made.  20 C.F.R. §§ 404.1520(h), 416.920(h).  If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the individual's residual functional capacity.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The residual functional capacity is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p.  To the extent that statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.  The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

---

[1] SSRs constitute the Social Security Administration's official interpretations of the statute it administers and its regulations. See Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009); see also 20 C.F.R. § 402.35(b)(1).  They are entitled to some deference as long as they are consistent with the Social Security Act and regulations. Bray, 554 F.3d at 1224.

The fourth step requires the ALJ to determine whether the individual has the residual functional capacity to perform his past relevant work ("PRW").  20 C.F.R. §§ 404.1520(f), 416.920(f).  PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  If the individual has the residual functional capacity to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his residual functional capacity, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If he is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner.  The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do.  Lockwood v. Comm'r, Soc. Sec. Admin., 616 F.3d 1068, 1071 (9th Cir. 2010).

II.   BACKGROUND

    A.   Procedural History

On October 20, 2010, Plaintiff filed applications for a period of disability and disability insurance benefits and supplemental security income alleging that he became disabled on July 18, 2010.  See, e.g., Administrative Record ("A.R.") 162-76.  His claims were denied initially on April 27, 2011, and upon reconsideration on September 2, 2011.  A.R. 75-90.  On September 23, 2011, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ").  A.R. 93-94. On February 4, 2013, Plaintiff, his attorney, and vocational expert appeared for a hearing before ALJ Barry H. Jenkins.  See A.R. 37-66. On March 22, 2013, the ALJ issued an unfavorable decision finding that Plaintiff had not been under a disability, as defined by the Social Security Act, from July 18, 2010, through the date of his decision.

1    A.R. 18-36.  The ALJ's decision became the final decision of the Commissioner when the Appeals

2    Council denied Plaintiff's request for review on July 1, 2014.  A.R. 1-6.

3           On August 20, 2014, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C.

4    § 405(g).  See Docket No. 1-1 (complaint).   Plaintiff filed an application for leave to appear in forma

5    pauperis, which the Court granted.  Docket No. 2.

6           B.      The ALJ Decision

7           The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520

8    and 416.920, and issued an unfavorable decision on March 22, 2013.  A.R. 18-36.  At step one, the ALJ

9    found that Plaintiff meets the insured status requirements of the Social Security Act through December

10   31, 2015 and has not engaged in substantial gainful activity since July 18, 2010.  A.R. 23.  At step two,

11   the ALJ found that Plaintiff has the following severe impairments: disorders of the back, AIDS, and an

12   affective/mood disorder.  A.R. 23.  At step three, the ALJ found that Plaintiff does not have an

13   impairment or combination of impairments that meet or medically equal one of the listed impairments

14   in 20 C.F.R. Part 404, Subpart P, Appendix 1.  A.R. 25.

15          The ALJ found that Plaintiff had the residual functional capacity to perform sedentary work as

16   defined by 20 C.F.R. 404.1567(a) and 416.967(a).  A.R. 26-29.  The ALJ further provided:

17                  Function by Function: all posturals occasional except no climbing of ropes, ladders or
                    scaffolds.  The claimant is limited to only occasional interaction with the public and
18                  coworkers.  He needs to avoid concentrated exposure to hazardous machinery,
                    unprotected heights and operational control of moving machinery.  He is limited to
19                  simple tasks with no production rate pace work.  He requires a sit/stand option, which
                    would permit him to work whether sitting or standing with the frequency of position
20                  change and the duration in each position is determined at the sole discretion of the
                    claimant.
21

22   A.R. 26-27.  At step four, the ALJ found Plaintiff was not capable of performing his past relevant work

23   as a waiter or waiter/captain.  A.R. 29.  At step five, the ALJ found that jobs exist in significant numbers

24   in the national economy that Plaintiff can perform based on his age, education, work experience, and

25   residual functional capacity.  A.R. 29-31.  In doing so, the ALJ defined Plaintiff as a younger individual

26   aged 18-44 on the alleged onset date who subsequently changed age category to a younger individual

27   aged 45-49, with at least a high school education, able to communicate in English, and found that the

28   transferability of job skills is not material to the determination of disability.  A.R. 29-30.  The ALJ found

1   that Plaintiff could work at the sedentary level as a bonder (electronics), touchup screener, or an

2   assembler. A.R. 30.  Based on all of these findings, the ALJ found Plaintiff not disabled and denied his

3   application for a period of disability and disability insurance benefits.  See A.R. 31.

4   III.    ANALYSIS AND FINDINGS

5        Plaintiff raises two arguments in this appeal.  First, he argues that the ALJ's hypothetical posed

6   to the vocational expert was incomplete because it differed from the ALJ's residual functional capacity

7   assessment.  See Docket No. 17 at 6-9.  Second, Plaintiff argues that the ALJ failed to properly address

8   the consultative examining opinion of Dr. Kenneth McKay.  See id. at 10-11.  The Court will address

9   each argument in turn.

10        A.    Residual Functional Capacity Assessment and Posed Hypothetical

11        "[T]he Commissioner, through the ALJ, must determine the claimant's 'residual functional

12   capacity,' a summary of what the claimant is capable of doing (for example, how much weight he can

13   lift)."  Valentine v. Comm'r of Social Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009).  "The ALJ may

14   . . . pose to a vocational expert a hypothetical incorporating the residual functional capacity

15   determination ('RFC'); the expert then opines on what kind of work someone with the limitations of the

16   claimant could hypothetically do."  Id. "If the assumptions of the hypothetical are not supported by the

17   record, the opinion of the vocational expert that claimant has a residual working capacity has no

18   evidentiary value."  Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  At the same time, errors in

19   an ALJ's hypothetical are harmless if the plaintiff's attorney poses an additional hypothetical that

20   includes all limitations and the vocational expert testifies that job positions are available under the

21   attorney's hypothetical.  See, e.g., Holstine v. Colvin, 2015 U.S. Dist. Lexis 109147, *18 (W.D. Wash.

22   Aug. 18, 2015).

23        In this instance, the ALJ's residual functional capacity assessment included a limitation that

24   Plaintiff must have a "sit/stand option, which would permit him to work whether sitting or standing with

25   the frequency of position change and the duration in each position is determined at the sole discretion

26   of the claimant."  A.R. at 27.  When the ALJ posed his hypothetical to the vocational expert, however,

27   he neglected to include this sit/stand option.  A.R. 61. The record reflects that Plaintiff's attorney

28   thereafter supplemented the ALJ's hypothetical to add an option by which the individual was only able

7

1    to sit for 30 minutes at any time, and would require a break for standing for 10 minutes after that 30

2    minutes.  A.R. 64.  The vocational expert responded that adding such a limitation would not alter the

3    examples of sedentary work that Plaintiff could perform so long as he could remain on task while sitting

4    or standing.  Id.

5         Plaintiff faults the ALJ for relying on the vocational expert because the ALJ's hypothetical was

6    incomplete, and the hypothetical as posed by his attorney included a specific period of time with the

7    sit/stand option whereas the residual functional capacity assessment gave the Plaintiff discretion to

8    determine the duration of each position in the sit/stand option.  See Docket No. 17 at 9.  The

9    Commissioner responds that this is a distinction without a difference because Plaintiff himself testified

10   that he needed to change positions every 30 minutes, Docket No. 19 at 4-5 (citing A.R. 51), which is

11   consistent with both the hypothetical posed and the residual functional capacity assessment.  In essence,

12   the two are coextensive because Plaintiff should exercise his discretion to change positions every 30

13   minutes based on the testimony he provided.

14        The Court agrees with Defendant.  It seems plain from the record that the ALJ adopted the

15   hypothetical posed by Plaintiff's attorney and that hypothetical was consistent with the residual

16   functional capacity assessment in light of Plaintiff's testimony about his needs.  Whether the sit/stand

17   option is framed as at Plaintiff's sole discretion or every 30 minutes, the practical result is the same.

18   Given that there is no prejudice to Plaintiff based on the facial inconsistency between the residual

19   functional capacity assessment and the hypothetical posed by Plaintiff's attorney, any error was harmless.

20   See, e.g., Kennedy v. Colvin, 2014 U.S. Dist. Lexis 100565, *38-40 (S. D. Cal. June 26, 2014), adopted,

21   2014 U.S. Dist. Lexis 100559 (S.D. Cal. July 22, 2014) (finding any error harmless when "the RFC

22   presented in the hypothetical and the RFC outlined in the final written decision, as a practical matter,

23   function as the same").

24        B.    Treatment of Consultative Examining Opinion of Dr. Kenneth McKay

25        Plaintiff next challenges the ALJ's treatment of the consultative examining opinion of Dr.

26   McKay.  Plaintiff points to the lack of any explicit indication of the weight the ALJ afforded that

27   opinion.  See, e.g., Docket No. 17 at 10.  Plaintiff further argues that the residual functional capacity

28   assessment fails to incorporate Dr. McKay's finding that Plaintiff's depression would reduce his

emotional resources to a moderate degree, which Plaintiff contends amounts to an implicit rejection of Dr. McKay's opinion.  See, e.g., id. at 11.  Defendant counters that Dr. McKay's finding regarding Plaintiff's depression is incorporated into the residual functional capacity assessment since it includes a limitation on social functioning and a limitation to simple tasks with no production rate pace work. See, e.g., Docket No. 19 at 6-8.  Defendant further notes that Dr. McKay opines that the symptoms at issue would probably improve gradually with treatment.  See Docket No. 19 at 7; see also A.R. 330. Lastly, Defendant argues that Dr. McKay's opinion is entirely consistent with those medical opinions to which the ALJ explicitly gave great weight.  See Docket No. 19 at 7; see also A.R. 29.

The Court agrees with Defendant.  The ALJ initially summarized the findings of Dr. McKay, A.R. 24, and later repeated the fact that Dr. McKay found moderate limitations to social functioning, A.R. 26. While Dr. McKay opined that Plaintiff's depression would reduce his emotional resources to a moderate degree, Dr. McKay simultaneously made clear that he believed Plaintiff "appears to retain sufficient cognitive resources to sustain employment."  A.R. 330.  Dr. McKay's opinion is consistent both with the opinions given "great weight" by the ALJ and with the ALJ's residual functional capacity assessment.  The Court finds no error in the ALJ's treatment of Dr. McKay's opinion.

IV.     CONCLUSION

Judicial review of the Commissioner's decision to deny disability benefits is limited to determining whether the decision is free from legal error and supported by substantial evidence.  It is the ALJ's responsibility to make findings of fact, draw reasonable inferences from the record, and resolve conflicts in the evidence including differences of opinion.  Having reviewed the Administrative Record as a whole and weighed the evidence that supports and detracts from the conclusion, the Court finds that the ALJ's decision is supported by substantial evidence under 42 U.S.C. § 405(g) and the ALJ did not commit legal error.

//

//

//

//

//

9

Based on the forgoing, the undersigned hereby RECOMMENDS that Plaintiff's Motion for Reversal and/or Remand (Docket No. 17) be DENIED and that Defendant's Cross-Motion to Affirm (Docket No. 20) be GRANTED.

IT IS SO ORDERED.

DATED:   September 17, 2015

_____

NANCY J. KOPPE
United States Magistrate Judge

NOTICE

Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  Thomas v. Arn, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991); Britt v. Simi Valley United Sch. Dist., 708 F.2d 452, 454 (9th Cir. 1983).